DELVIN BERNARD FLOWERS,

          Petitioner,

-vs-                                  **Case No. 6:08-cv-1982-Orl-19KRS**

UNITED STATES OF AMERICA,

          Respondent.

_____

# ORDER

This case comes before the Court on the following:

1.      Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 by Petitioner Delvin Bernard Flowers (Doc. No. 8, filed Jan. 14, 2009);

2.      Memorandum of Law in Support of § 2255 Motion to Vacate/Set Aside or Correct Sentence by Petitioner Delvin Bernard Flowers (Doc. No. 9, filed Jan. 14, 2009); and

3.      Motion in Opposition to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 by Respondent United States of America (Doc. No. 17, filed Apr. 20, 2009).

## Background

Petitioner was indicted on a single count of conspiracy to possess with intent to distribute and to distribute a quantity in excess of five (5) or more kilograms of a mixture and substance containing a detectable amount of cocaine hydrochloride, a quantity in excess of 50 grams of a mixture and substance containing a detectable amount of cocaine base, commonly known as "crack" cocaine, Schedule II controlled substances, and a quantity in excess of 50 kilograms of marihuana,

a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 841(b)(1)(A)(iii), 841(b)(1)(c), and 846. (Criminal Case No. 6:06-cr-125-Orl-19KRS, Doc. No. 212, filed July 12, 2006).[1] On October 20, 2006, Petitioner entered into a written plea agreement and pled guilty before Magistrate Judge Karla R. Spaulding to conspiracy to possess with the intent to distribute and to distribute a quantity in excess of five (5) kilograms of cocaine hydrochloride, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii). (Criminal Case, Doc. No. 885, filed Oct. 20, 2006; Criminal Case Doc. No. 891, filed Oct. 20, 2006.) The Government agreed in Paragraph 10 of the plea agreement to recommend at sentencing that Petitioner receive an upward adjustment of no more than two levels for his leadership role in the offense pursuant to U.S.S.G. § 3B1.1(c). (Criminal Case Doc. No. 885 at 4.) Paragraph 10 further stipulated that Petitioner would not be allowed to withdraw his guilty plea if the recommendation was not accepted by the Court. (*Id.* at 5.) Magistrate Judge Spaulding entered a Report and Recommendation, recommending that the guilty plea be accepted and that Petitioner be adjudicated guilty. (Criminal Case Doc. No. 888, filed Oct. 20, 2006.) The Court adopted the recommendation that the guilty plea be accepted and deferred ruling on acceptance of the plea agreement until the time of sentencing. (Criminal Case Doc. No. 974, filed Oct. 25, 2006.)

Petitioner's sentencing hearing commenced on May 29, 2007. Petitioner objected to the recommendation in the Presentence Report to apply a four level leadership enhancement pursuant to U.S.S.G. § 3B1.1(c) for Petitioner's leadership role in the charged conspiracy. (Criminal Case Doc. No. 1489 at 8-9, filed June 4, 2007.) Petitioner argued that the evidence in the case warranted only a two level leadership enhancement. (*Id.* at 10.) The Government declined to put on evidence

---

[1] Criminal Case No. 6:06-cr-125-Orl-19KRS will be referred to as "Criminal Case."

relating to Petitioner's leadership role pursuant to Paragraph 10 of the plea agreement. (*Id.* at 10-11.) The Sentencing Court called witnesses sua sponte in order to determine if there was a factual basis for the four-level leadership enhancement recommended by the Presentence Report. (*Id.* at 11-24.) Petitioner objected to the manner in which the Court received evidence and asserted that such evidence did not support a four level enhancement. (*Id.* at 28-32.) The Court continued the sentencing hearing and ordered the parties to brief the issues raised by Petitioner. (*Id.* at 33-34.)

After receiving the parties' submissions, the Court entered an Order that it would not accept Petitioner's plea agreement and that Petitioner would have the option to either (1) show a fair and just reason for withdrawing his plea of guilty pursuant to Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure and proceed to trial; or (2) maintain his guilty plea and proceed to sentencing without a plea agreement. (Criminal Case Doc. No. 1536 at 10, filed July 25, 2007.)

Petitioner's sentencing hearing resumed on July 30, 2007. (Criminal Case Doc. No. 1587, filed Nov. 2, 2007.) The Court advised Petitioner of his two options pursuant to the Order filed July 25, 2007, and Petitioner and his counsel confirmed that Petitioner wanted to maintain his guilty plea and proceed to sentencing without a plea agreement:

> THE COURT: . . . Now if you want to go ahead, you have the election, but you also have the election – Mr. Flowers, you have the election not to go ahead with this, and you can go to trial. I will, you know, let you withdraw your plea of guilty, if you show me a fair and just reason for withdrawing it, and I gave you a road map to get there in the order.
>
> THE DEFENDANT [Petitioner]: No, I don't want to go to trial. I don't want to go to trial.
>
> MR. BLANKNER [Counsel for Petitioner at Sentencing]: Your Honor, Mr. Flowers spent a long time, too, while he was in jail advising other defendants of his cooperation and that others ought to likewise consider doing the same. So he put himself in that position, because he intended to enter a plea of guilty in this matter

and did so. And I think it's in his best interest that his plea stand, whether or not the Court decides to score him at four levels or two levels.

. . .

THE COURT: So, let me understand what you're saying to me. Even though I am not accepting the plea agreement, Mr. Flowers wants to stand by his plea of guilty?

MR. BLANKNER: Yes, he does.

THE COURT: And he understands that he has an option right now to give me a fair and just reason to withdraw it and that a fair and just reason, as far as I'm concerned, as I said in that order, would be that he bargained for the benefit of this whole contract, and that if I start saying I'm not accepting this and so forth, that he wants to go back to square one and have a trial; you understand that?

MR. BLANKNER: And I have advised him that by going to trial he would lose acceptance of responsibility, in my opinion, because obviously someone who is going to trial is saying they are not guilty or they're challenging the government to prove their guilty when, in fact, Mr. Flowers knows he's guilty of this offense, [and] admitted his guilt in proffers to the government.

I was there, agents were there, and we had the full and frank discussion on more than one occasion. Mr. Flowers held himself out as being a potential witness against any other co-defendant who decided that they would take their risk at trial and to testify truthfully against those persons. So, to that extent, I told [Petitioner] that it would not be in his best interest, and I think he very much agrees on that as well.

THE COURT: So, you're going to stand by your plea of guilty?

THE DEFENDANT: Yes, ma'am.

THE COURT: Correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: I'm sorry, I was looking at your attorney. Is that correct?

MR. BLANKNER: Yes, absolutely, Your Honor.

(*Id.* at 10-13.)[2]

---

[2] Petitioner does not claim that his decision to stand by his plea of guilty was unknowingly
(continued...)

-4-

The Government then presented evidence on the issue of whether the four-level increase should apply. (*Id.* at 16-34.) After hearing evidence presented by the Government and arguments from both parties, the Court overruled Petitioner's objection to the application of a four-level leadership enhancement and applied the four-level enhancement in calculating Petitioner's guideline range. (*Id.* at 42-43; 47.)

Petitioner also objected to the Presentence Report's recommendation of Criminal History category III, arguing that although the Court could legally impose a category III criminal history, the Court should exercise its discretion to impose a lower criminal history category. (*Id.* at 43-46.) The Court overruled the objection. (*Id.* at 46-47.) The Court then imposed a sentence of one hundred forty-one (141) months imprisonment to be followed by a five-year term of supervised release.[3] (*Id.* at 60.) The Court found that Petitioner had provided substantial assistance to the Government and thus imposed a sentence departing from the otherwise applicable guidelines pursuant to U.S.S.G. § 5K1.1. (*Id.* at 63.)

Just before concluding the sentencing proceeding, the Court stated: "the Court *has accepted* the plea agreement, because it adequately reflects the seriousness of the actual offense behavior and does not undermine the statutory purposes of sentencing." (*Id.* (emphasis added).) The Court

_____

(...continued)
or involuntarily made. In addition, Petitioner does not dispute the veracity of any statements in the record. Thus, the statements in the record are presumed true. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("[R]epresentations of the defendant . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

[3] A judgment reflecting this sentence was entered on August 2, 2007. (Criminal Case Doc. No. 1546, filed Aug. 2, 2007).

shortly thereafter asked Petitioner if he understood the consequences of the Court *not accepting* the

plea agreement:

> THE COURT: And now that I have not accepted your plea agreement, you are free
> to appeal. You don't have a limitation as I explained to you earlier; do you
> understand that?
>
> THE DEFENDANT: Yes.
> . . .
> THE COURT: Do you have any question you want to ask me about appeals or
> anything else that's happened in this case or is there anything you felt should have
> been said or should have been said differently in this proceeding?
>
> THE DEFENDANT: No. No, ma'am.
>
> THE COURT: All right. Mr. Blankner, anything else?
>
> MR. BLANKNER: No, I'm fine. We're fine. If he wants to appeal, we'll file it
> timely for him.

(*Id.* at 64-65.)

Petitioner signed an Acknowledgment of Right to Appeal at the sentencing hearing.

(Criminal Case Doc. No. 1545, filed Aug. 1, 2007.) Petitioner timely appealed, arguing that the

district court improperly (1) enhanced his sentence four levels for a leadership role in the offense

pursuant to U.S.S.G. § 3B1.1; and (2) failed to depart from a criminal history category III to

category II by not directing the Government to meet its burden of showing that Petitioner's prior

convictions were not misdemeanors. (Criminal Case Doc. No. 1678 at 3, filed June 3, 2008.) The

Eleventh Circuit Court of Appeals rejected both of Petitioner's arguments on appeal and affirmed

his sentence. (*Id.* at 7.)

Petitioner timely filed a motion to vacate, set aside, or correct an illegal sentence pursuant

to 28 U.S.C. § 2255, asserting four grounds for relief: (1) breach of the plea agreement by the

Government (Doc. No. 8 at 6); (2) abuse of discretion by the Sentencing Court in rejecting the plea

agreement (Doc. No. 8 at 8); (3) ineffective assistance of trial counsel (Doc. No. 8 at 4); and (4) ineffective assistance of appellate counsel. (Doc. No. 8 at 5.) The Government filed a response to the Section 2255 Motion. (Doc. No. 17.) Petitioner did not file a reply to the response.

## Standard of Review

### I.      Relief

Section 2255 provides federal prisoners with an avenue for relief under limited circumstances:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2009). If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* To obtain this relief on collateral review, however, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

### II.      Hearing

Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." The Eleventh Circuit Court of Appeals has explained, "[a] habeas corpus petitioner is entitled to an evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'"

*Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (quoting *Futch v. Dugger*, 874 F.2d 1483,

1485 (11th Cir.1989)).   However, "if the record refutes the applicant's factual allegations or

otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Aron v. United States*, 291 F.3d 708, 715

(11th Cir. 2002) (explaining that no evidentiary hearing is needed when a petitioner's claims are

"affirmatively contradicted by the record" or "patently frivolous").

**Analysis**

**I.  Breach of Plea Agreement by Government and Abuse of Discretion by Sentencing Court
in Rejecting the Plea Agreement**

Petitioner asserts that (1) the Government breached the plea agreement by advocating for a

four-level leadership enhancement pursuant to U.S.S.G. § 3B1.1(c); (2) the Sentencing Court abused

its discretion by improperly severing Petitioner's guilty plea from the plea agreement; and (3) the

Sentencing Court abused its discretion by rejecting the entire plea agreement without authority to

do so.  (Doc. No. 8 at 6-8; Doc. No. 9.)  The Government argues in response that Petitioner is not

entitled to relief because he procedurally defaulted these claims.  (Doc. No. 17 at 6-7.)

A defendant who fails to object at the trial court level to error he believes the court has

committed or fails to raise such objection on appeal is procedurally barred from presenting his

objection in a subsequently filed Section 2255 motion absent a showing of (1) cause and prejudice

or (2) a fundamental miscarriage of justice.[4]  *See Frady*, 456 U.S. at 166-68; *Mills v. United States*,

---

[4] Absent cause and prejudice, the procedural default of a constitutional claim may be excused
only if enforcing the default would result in a fundamental miscarriage of justice.  *Mize v. Hall*, 532
F.3d 1184, 1190 (11th Cir. 2008).  This exception applies if the petitioner can show that, in light of
new evidence, it is probable that no reasonable juror would have convicted him.  *Id.*  (citing *Schlup*
(continued...)

36 F.3d 1052, 1055 (11th Cir. 1994). In order to show cause, a petitioner must show some external impediment preventing counsel from constructing or raising the claim. *High v. Head*, 209 F.3d 1257, 1262-63 (11th Cir. 2000). "Such external impediments include evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to counsel." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). Cause does not exist, however, where the injury is fairly attributable to a petitioner's own conduct. *Wright v. Hopper*, 169 F.3d 695, 706 (11th Cir. 1999). Prejudice exists where the alleged error actually and substantially disadvantaged Petitioner's defense so that he was denied fundamental fairness. *Id.* Stated differently, prejudice exists if there is at least a reasonable probability that the result of the proceeding would have been different had the alleged error not occurred. *Mize*, 532 F.3d at 1190.

Petitioner's sole argument for establishing cause is that his trial counsel was unconstitutionally ineffective for failing to object to the three errors asserted by Petitioner. (*See* Doc. No. 9 at 20, 37.) The Government argues in response that counsel's failure to object is not ineffective assistance of counsel because the applicable law is contrary to Petitioner's asserted errors. (Doc. No. 17 at 7.)

A claim that cause exists due to ineffective assistance of counsel requires a showing of constitutionally ineffective assistance of counsel as defined in *Strickland v. Washington*, 466 U.S. 668 (1984). *Fortenberry v. Haley*, 297 F.3d 1213, 1222 (11th Cir. 2002); *Reece v. United States*, 119 F.3d 1462, 1465 (11th Cir. 1997). Under *Strickland*, a petitioner must show that (1) "counsel's

---

(...continued)
*v. Delo*, 513 U.S. 298, 327 (1995)). However, Petitioner only argues that cause and prejudice exist, not that there was any fundamental miscarriage of justice. (Doc. No. 9.)

representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. These two elements are commonly referred to as the performance and prejudice prongs, respectively. *Reece*, 119 F.3d at 1464 n.4. If Petitioner fails to establish either prong, the Court need not consider the other prong in finding that there was no ineffective assistance of counsel. *Strickland*, 466 U.S. at 697.

As to the prejudice prong, Petitioner must show that there is a reasonable probability that, but for his trial counsels' failure to raise the aforementioned issues, the result of Petitioner's case would have been different. *Strickland*, 466 U.S. at 694. Thus, to determine if trial counsel's performance prejudiced Petitioner, the Court will separately review the merits of Petitioner's claims that (1) the Government breached the plea agreement; (2) the Sentencing Court improperly severed Petitioner's guilty plea from his plea agreement; and (3) the Sentencing Court had no authority to reject the entire plea agreement.

### A. Breach of Plea Agreement by the Government

Petitioner argues that the Government breached Paragraph 10 of the plea agreement by arguing in favor of a four-level leadership enhancement at sentencing. (Doc. No. 9 at 2-3.) The Government argues in response that there can be no breach of the plea agreement by the Government because the Government only argued for the four-level leadership enhancement after the Court rejected the plea agreement. (Doc. No. 17 at 10.)

The record here clearly supports the Government's position. Pursuant to Paragraph 10 of the plea agreement, the Government was bound to recommend at most a two-level leadership enhancement:

> Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant agree to jointly recommend to the Court that the defendant receive an upward adjustment of no more than two levels pursuant to USSG 3B1.1© [sic], regarding the defendant's role in the offense. The parties understand that such a joint recommendation is not binding on the Court, and if not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

(Doc. No. 885 at 4-5.)

The Court accepted Petitioner's guilty plea and deferred ruling on acceptance of the plea agreement until the sentencing hearing. (Criminal Case Doc. No. 974.) At the initial sentencing hearing on May 29, 2007, the Government declined to put on evidence of Petitioner's leadership role.[5] (Criminal Case Doc. No. 1489 at 10-11.) The Sentencing Court then called witnesses sua sponte in order to determine if there was a factual basis for the four-level leadership enhancement recommended by the Presentence Report. (*Id.* at 11-34.) The Court continued the sentencing hearing to allow the parties to brief Petitioner's objections to the manner in which the Sentencing Court received evidence. (*Id.* at 34.) On July 25, 2007, the Court declined to adopt the plea agreement and directed Petitioner to either (1) "show a fair and just reason" for withdrawing his plea of guilty pursuant to Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure and to proceed to trial; or (2) proceed to sentencing without a plea agreement. (Criminal Case Doc. No. 1536 at 10.) At the continuation of the sentencing hearing on July 30, 2007, Petitioner chose to stand by his plea of guilty and continue with sentencing. (Criminal Case Doc. No. 1587 at 10-13.) The Court then stated that the Government was free to present evidence on the four level leadership

---

[5] Petitioner claims that the Government breached the plea agreement by not supporting the two-level leadership enhancement recommendation with a cogent argument. (Doc. No. 9 at 9-10.) Petitioner does not cite, and the Court does not find, any caselaw or provision in the plea agreement requiring the Government to act in this manner.

enhancement, and the Government did so. (*Id.* at 13.) When the Government presented such evidence on July 30, 2007, it was no longer bound by the plea agreement because the Sentencing Court had rejected the plea agreement on July 25, 2007. Thus, there was no breach of the plea agreement by the Government, and Petitioner was not prejudiced by trial or appellate counsels' failure to argue that the Government breached the plea agreement by supporting a four level leadership enhancement. Accordingly, Petitioner has not established cause for his procedural default, and his claim that the Government breached the plea agreement is not cognizable here.

### B. Severing of Guilty Plea from Plea Agreement by the Sentencing Court

Petitioner also claims prejudice from the Sentencing Court "severing" his guilty plea from the remainder of his plea agreement. (Doc. No. 9 at 5-9, 14-18.) In particular, Petitioner maintains that the Court improperly accepted Petitioner's guilty plea and then rejected the plea agreement at a later time. (*Id.* at 6-7.)

Petitioner's argument is inapposite to Supreme Court precedent and Rule 11(d) of the Federal Rules of Criminal Procedure. In *United States v. Hyde*, 520 U.S. 670 (1997), the Supreme Court stated that "guilty pleas can be accepted while plea agreements are deferred, and the acceptance of the two can be separated in time." *Id.* at 676. Thus, the Court lawfully accepted Petitioner's plea agreement and deferred ruling on accepting the plea agreement until sentencing. (Criminal Case Doc. No. 974.)

Upon rejecting the plea agreement, the Sentencing Court directed Petitioner to choose between (1) "show[ing] a fair and just reason" for withdrawing his plea of guilty pursuant to Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure and to proceed to trial; or (2) proceeding to sentencing without a plea agreement. (Criminal Case Doc. No. 1536 at 10.) These options complied

with Rule 11 of the Federal Rules of Civil Procedure. Pursuant to Rule 11(d), Petitioner was required to show a "fair and just reason" for withdrawing his guilty plea because the Sentencing Court had already accepted Petitioner's guilty plea (Criminal Case Doc. No. 974), and the plea agreement was not rejected pursuant to Rule 11(c)(5).[6] Moreover, the Sentencing Court was not obligated to state its justification for rejecting the plea agreement, although it did so here.[7] *See United States v. Bean*, 564 F.2d 700, 702 n.3 (5th Cir. 1977)[8] ("[T]he absence of any requirement [in Rule 11] that the court state its reasons for refusing a plea bargain indicates that no statement of reasons is necessary."); *see also United States v. Lee*, 265 F. App'x 763, 766 (11th Cir. 2008) (citing *Bean* for the same proposition). Petitioner was not prejudiced by the Court's mandate to choose between (1) showing "a fair and just reason" for withdrawing his guilty plea and proceeding to trial or (2) maintaining his guilty plea and proceeding to sentencing without a plea agreement because those choices complied with Rule 11 of the Federal Rules of Criminal Procedure. Therefore, Petitioner has not established cause for his procedural default, and his claim that the Sentencing Court improperly severed his guilty plea from the plea agreement is not cognizable here.

---

[6] Rule 11(d) of the Federal Rules of Criminal Procedure states that a defendant may withdraw a plea of guilty

> (1) before the court accepts the plea, for any reason or no reason; or
> (2) after the court accepts the plea, but before it imposes sentence if:
> > (A) the court rejects a plea agreement under Rule 11(c)(5); or
> > (B) the defendant can show a fair and just reason for requesting the withdrawal.

[7] In its Order dated July 25, 2007, the Sentencing Court stated its authority and justification for rejecting the plea agreement and provided Petitioner a road map for establishing a "fair and just reason" for withdrawing his guilty plea, if he chose to do so. (Criminal Case Doc. No. 1536 at 10.)

[8] The Eleventh Circuit Court of Appeals adopted as binding precedent all prior decisions of the former Fifth Circuit Court of Appeals issued prior to October 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

## C. Rejection of Plea Agreement by the Sentencing Court

Petitioner asserts that the Sentencing Court unlawfully rejected the entire plea agreement, thereby denying Petitioner "all of the myriad benefits of his agreement."[9] (Doc. No. 9 at 35.) Petitioner argues that because only a Type A[10] or Type C[11] plea agreement may be rejected pursuant to Rule 11(c)(5) of the Federal Rules of Criminal Procedure, the Court had no authority to reject Petitioner's Type B[12] plea agreement. (*Id.* at 11, 30, 36.) Petitioner does not cite and the Court finds no caselaw supporting this proposition.[13] Rather, it is well-settled that while Rule 11 discusses the procedure for accepting and rejecting plea agreements, the decision to accept or reject plea agreements rests in the sound discretion of the sentencing court. *See Bean*, 564 F.2d at 702-03

---

[9] In addition to claiming prejudice for not receiving a recommendation of no more than a two-level leadership enhancement, Petitioner claims prejudice for not receiving the benefit of the "Self-incrimination" and the "No Further Charges" clauses of the plea agreement. (Criminal Case Doc. No. 885 at 4, 6.)

[10] A "Type A" plea agreement is one in which the Government agrees that it will not bring or will move to dismiss other charges. *See* Fed. R. Crim. P. 11(c)(1)(A).

[11] A "Type C" plea agreement is one in which the parties agree to a particular sentence or sentencing range that binds the sentencing court once the court accepts the plea agreement. *See* Fed. R. Crim. P. 11(c)(1)(C).

[12] A "Type B" plea agreement is one in which the parties merely agree to make a non-binding sentencing recommendation to the sentencing court. *See* Fed. R. Crim. P. 11(c)(1)(B).

[13] Petitioner relies heavily upon *In re Vasquez-Ramirez*, 443 F.3d 692 (9th Cir. 2006), for the proposition that the Court had no authority to reject the entire plea agreement. The petitioner in *Vasquez-Ramirez* challenged the district court's rejection of a guilty plea, *id.* at 694-96, whereas Petitioner challenges the district court's rejection of a plea agreement. Different legal standards define district courts' authority to reject guilty pleas and plea agreements. *See id.* at 695-96 ("Thus, viewing Rules 11(a) and (b) together, it is clear that a court must accept an unconditional guilty plea, so long as the Rule 11(b) requirements are met. The existence or non-existence of a Rule 11(c) plea agreement is irrelevant to the separate issue of how a defendant chooses to plead."). Thus, *Vasquez-Ramirez* does not support Petitioner's claim that the Sentencing Court had no authority to reject the entire plea agreement.

("While [Rule 11] provided guidelines for plea bargaining procedure, the Rule does not contravene a judge's discretion to reject such a plea. . . . The plea agreement procedure does not attempt to define criteria for the acceptance or rejection of a plea agreement. Such a decision is left to the discretion of the individual judge."); *United States v. Bennett*, 990 F.2d 998, 1002 (7th Cir. 1993) (noting that a Type B plea agreement does not limit the sentencing court "in any respect").

It is within the province of the Court to reject a plea agreement when it believes that enforcing the agreement will undermine the purposes of punishment and sentencing to which it is bound under 18 U.S.C. § 3553. *See* 18 U.S.C. § 3553(a)(1),(6) (requiring a sentencing court to impose a sentence that is "sufficient, but not greater than necessary" based upon "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"); *United States v. Martin*, 287 F.3d 609, 622 (7th Cir. 2002) ("The sentencing judge must ensure that the main objectives of the sentencing guidelines, consistency and certainty in sentencing, are not undermined by plea bargaining between the parties.") (internal quotations omitted). Because the Government declined to put on evidence of the nature and circumstances of the offense and merely stand by the joint sentencing recommendation in the plea agreement at the initial sentencing hearing (Doc. No. 1489 at 11), the Sentencing Court had to choose between (1) calling witnesses sua sponte to elicit facts; or (2) rejecting the entire plea agreement. *See Martin*, 287 F.3d at 622 ("A plea agreement is a unified document, and even if the district court wanted to it could not accept part and reject part."). The first option may have

presented a situation in which the Court would have improperly assumed the role of advocate.[14] *See*

*United States v. Wright*, 392 F.3d 1269, 1274 (11th Cir. 2004) (stating that a court "abuses its

authority when it abandons its [adjudicative] role and assumes that of an advocate") (internal

quotations omitted).  Thus, the Sentencing Court lawfully exercised its discretion in rejecting the

plea agreement even though it merely contained a non-binding sentencing recommendation.

Petitioner further asserts that the Sentencing Court improperly rejected the plea agreement

on the grounds that it disagreed with Petitioner receiving a different sentencing recommendation

than co-defendant Mark Weaver.  (Doc. No. 9 at 11.)  This argument must be rejected for three

reasons.  First, the Sentencing Court was free to reject the non-binding sentencing recommendation

made in the plea agreement.  *See* Fed. R. Crim. P. 11(c)(1)(B).  Second, as discussed above, the

Court is mandated by 18 U.S.C. § 3553(a)(6) to impose a sentence based upon, *inter alia*, "the need

to avoid unwarranted sentence disparities among defendants with similar records who have been

---

[14] Although the Court called witnesses and received evidence sua sponte at the first part of
the sentencing hearing, it is clear from the record that the Court did not consider any of that evidence
in fashioning Petitioner's sentence at the continuation of the sentencing hearing:

> MR. BLANKNER: . . . I understand that the Court has concerns with whether he
> should receive a two level or a four level [leadership enhancement], and the Court
> has come to the conclusion that he should receive a four level.
>
> THE COURT:  No, I haven't come to that conclusion. . . . The probation officer
> made that representation to me.  He comports with what I have heard in these other
> cases, but I have not made that finding.  I don't want to be in a position where I am
> the one that has to figure out who the witnesses are going to be and put them on the
> witness stand.  That is the government's responsibility to do that.
> . . .
>         So, I don't want to be in that position.  I don't think I should be.  That is not
> the way the court is supposed to work.  So, go ahead, but I don't want you to think
> that I've made up my mind already.

(Criminal Case Doc. No. 1587 at 8-9.)

found guilty of similar conduct." Thus, the sentence received by co-defendant Mark Weaver may be lawfully considered in fashioning Petitioner's sentence. Finally, the Sentencing Court clearly stated during the sentencing hearing that facts elicited during other sentencings in this case would not affect the fashioning of Petitioner's sentence:

> THE COURT: Here is the problem, Mr. Blankner. The probation officer tells me he should have a four level increase. I have had how many defendants in this case?

> MR. BLANKNER: Thirty, maybe. I know a lot.

> THE COURT: And I have learned from a lot of circumstances a lot of things about this case, but I am sentencing Mr. Flowers hear (sic) today, and I'm putting all that out of my head. It's going to be based on what's presented here and not what I've heard somewhere else that you know nothing about and you can't cross examine it. It's got to be based on what is here in the courtroom.

(Criminal Case Doc. No. 1587 at 8.) Petitioner does not challenge the Court's statement in the record that facts elicited at prior sentencings in this case would not affect Petitioner's sentence. Finding that the applicable law and undisputed facts in the record contradict Petitioner's claim that he was prejudiced by the Court's prior sentencing of Mark Weaver, such claim must be rejected.

Finally, Petitioner claims that he was prejudiced by the following statement made by Sentencing Court after the sentence was pronounced:

> THE COURT: The Court has accepted the plea agreement, because it adequately reflects the seriousness of the actual offense behavior and does not undermine the statutory purposes of sentencing.

(Criminal Case Doc. No. 1587 at 63.) The record reflects that this was an innocent misstatement by the Sentencing Court which had no substantive effect on the proceedings. First, the Sentencing Court made clear in its Order dated July 25, 2007, that it was rejecting the plea agreement. (Criminal Case Doc. No. 1536 at 10.) Next, at the outset of the continuation of the sentencing

hearing on July 30, 2007, the Sentencing Court confirmed that Petitioner wanted to maintain his

guilty plea and proceed with sentencing even though the plea agreement was not accepted:

> THE COURT: So, let me understand what you're saying to me. Even though I am
> not accepting the plea agreement, Mr. Flowers wants to stand by his plea of guilty?
>
> MR. BLANKNER: Yes, he does.

(*Id.* at 12.) Finally, after the Sentencing Court misspoke, the Court informed Petitioner of his right

to appeal in light of the plea agreement not being accepted:

> THE COURT: And now that I have not accepted your plea agreement, you are free
> to appeal. You don't have a limitation as I explained to you earlier; do you
> understand that?
>
> THE DEFENDANT: Yes.
> . . .
> THE COURT: Do you have any question you want to ask me about appeals or
> anything else that's happened in this case or is there anything you felt should have
> been said or should have been said differently in this proceeding?
>
> THE DEFENDANT: No. No., ma'am.
>
> THE COURT: All right. Mr. Blankner, anything else?
>
> MR. BLANKNER: No, I'm fine. We're fine. If he wants to appeal, we'll file it
> timely for him.

(*Id.* at 64-65.)

Critically, Petitioner does not allege how the Court's misstatement prejudiced him. In any

case, because it is clear from the totality of the circumstances that the Sentencing Court rejected the

plea agreement, Petitioner cannot claim prejudice from a single misstatement by the Sentencing

Court that the plea agreement was accepted.

Finding no authority contrary to the reasoning stated above, and Petitioner offering no

contrary authority, the Sentencing Court lawfully rejected the plea agreement. Therefore, Petitioner

has not established cause for his procedural default, and his claim that the Sentencing Court lacked the authority to reject the plea agreement is not cognizable here.

## II.  Ineffective Assistance of Counsel

Petitioner has asserted that his trial and appellate counsel rendered ineffective assistance by failing to argue that (1) the Government breached the plea agreement by advocating for a four-level leadership enhancement (Doc. No. 9 at 5, 16); (2) the Sentencing Court improperly severed the guilty plea from the plea agreement (*id.* at 8); and (3) the Sentencing Court had no authority to reject the entire plea agreement.  (*Id.* at 5, 13, 18, 32-33, 36).

Petitioner did not raise these claims on direct appeal; however, "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."  *Massaro v. United States*, 538 U.S. 500, 509 (2003).  As stated above, a successful claim of ineffective assistance of counsel requires the Petitioner to show that (1) "counsel's representation fell below an objective standard of reasonableness," and that (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 688, 694; *see also Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (noting that claims of ineffective assistance of trial and appellate counsel are both governed by *Strickland*).  If the Petitioner fails to establish either prong, the Court need not consider the other prong in finding that there was no ineffective assistance of counsel.  *Strickland*, 466 U.S. at 697.

As to the prejudice prong, Petitioner must show more than how trial and appellate counsel's allegedly deficient performance had some conceivable effect on the outcome of the proceeding. *Gilreath*, 234 F.3d at 551.  Instead, Petitioner must show "that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citing *Strickland*, 466 U.S. at 694). Similarly, "counsel's performance will be deemed prejudicial if . . . the neglected claim would have a reasonable probability of success on appeal." *Philmore*, 575 F.3d at 1265.

Petitioner was not prejudiced by the failure of trial and appellate counsel to raise the specified issues because, as discussed above, they had no reasonable probability of success on the merits. *See supra* parts I.A, I.B, I.C. Absent any prejudice to Petitioner, his claims of ineffective assistance of trial and appellate counsel must be rejected. *See Cross v. United States*, 893 F.2d 1287, 1289-92 (11th Cir. 1990) (rejecting the petitioner's claim of ineffective assistance of appellate counsel for failure to raise a particular issue on appeal because the issue had no merit and thus the petitioner was not prejudiced).

## Conclusion

Based on the foregoing, the Court finds that Petitioner is not entitled to a hearing because his claims are either facially deficient or affirmatively contradicted by the record. Petitioner has not demonstrated that he is entitled to relief on any of the claims he has raised. Any allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

1.    The Amended Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 by Petitioner Delvin Bernard Flowers (Doc. No. 8) is **DENIED**, and this case is **DISMISSED** with prejudice.

2.      The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3.      The Clerk of the Court is directed to file a copy of this Order in criminal case number 6:06-cr-125-Orl-19KRS and to terminate the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Criminal Case Doc. No. 1729, filed Jan. 14, 2009) pending in that case.

4.      This Court should grant an application for certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right.[15] Accordingly, a Certificate of Appealability is **DENIED** in this case.

Dated this 9th day of December, 2009 in Orlando, Florida.

---

[15] Pursuant to the *Rules Governing Section 2255 Proceedings for the United States District Court*,

The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.

Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C. foll. § 2255.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Delvin Bernard Flowers
Counsel of Record